IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

No. _____

AMERISURE MUTUAL INSURANCE COMPANY,
individually and as assignee/subrogee of M.J. HARRIS, INC.,
and M.J. HARRIS, INC.,

        Plaintiffs,

v.

ADMIRAL INSURANCE COMPANY and
SOUTHWESTERN INDUSTRIAL CONTRACTORS
AND RIGGERS, INC.,

        Defendants.

**COMPLAINT FOR BREACH OF CONTRACT,
CONTRACTUAL INDEMNIFICATION, TRADITIONAL AND PROPORTIONAL
COMMON LAW INDEMNIFICATION, NEGLIGENT FAILURE TO PROCURE
INSURANCE, BREACH OF THE COVENANTS OF GOOD FAITH AND FAIR
DEALING, CONTRIBUTION, EQUITABLE SUBROGATION/CONTRIBUTION,
UNJUST ENRICHMENT, VIOLATIONS OF THE NEW MEXICO UNFAIR
INSURANCE PRACTICES ACT AND VIOLATIONS OF THE NEW MEXICO UNFAIR
TRADE PRACTICES ACT
& JURY DEMAND**

COME NOW Plaintiffs Amerisure Mutual Insurance Company and M.J. Harris, by and through their attorneys of record, Civerolo, Gralow, Hill & Curtis, A Professional Association (Lisa Entress Pullen and William P. Gralow) and for their Complaint against Defendants Admiral Insurance Company and Southwestern Industrial Contractors and Riggers, Inc., state as follows:

### PARTIES AND JURISDICTION

*Amerisure Mutual Insurance Company*

1. Amerisure Mutual Insurance Company, ("Amerisure") is a Michigan-domiciled corporation that is also approved to do business in New Mexico. Amerisure designs, markets,

and underwrites commercial property and casualty and other insurance products. At all times relevant to this Complaint, Amerisure provided a commercial general liability policy to its insured, M.J. Harris.

### *M.J. Harris, Inc.*

2. M.J. Harris, Inc. ("M.J. Harris") is an Alabama-domiciled company that is authorized to do business in New Mexico, and that performed general contractor services for construction work on the Rehabilitation Hospital of Southern New Mexico, in Las Cruces, New Mexico.

### *Southwestern Industrial Contractors and Riggers, Inc.*

3. Upon information and belief, Southwestern Industrial Contractors and Riggers, Inc. ("Southwestern") is a Florida corporation with its principal place of doing business in El Paso, Texas and that performed sub-contracted construction work on the Rehabilitation Hospital of Southern New Mexico, in Las Cruces, New Mexico.

### *Admiral Insurance Company*

4. Upon information and belief, Admiral Insurance Company ("Admiral") is a Delaware corporation which provides insurance products and services and is authorized to sell surplus lines insurance in the State of New Mexico. On information and belief, Admiral is domiciled in Delaware with administrative offices in Cherry Hill, New Jersey.

5. Also on information and belief, Admiral issued an insurance policy to Southwestern that was in effect at the time Southwestern performed construction work on the Rehabilitation Hospital of Southern New Mexico. Admiral's policy included M.J. Harris, Inc. as an additional insured.

6. The events giving rise to this Complaint occurred in Doña Ana County, New Mexico.

7. This Court has diversity subject matter jurisdiction over the Complaint and personal jurisdiction over the parties, and venue is proper in this Court.

*GENERAL ALLEGATIONS COMMON TO ALL CLAIMS*

8. M.J. Harris and Southwestern entered into a written agreement for the provision of construction work on the Rehabilitation Hospital of Southern New Mexico in Las Cruces, New Mexico. Southwestern's President, Bill C. Fiske, signed the agreement on February 21, 2007. The scope of Southwestern's contracted work included, but was not limited to, the installation of steel joists, steel deck, and structural steel in the construction of a 20-bed addition to the Rehabilitation Hospital. In the Purchase Order, Southwestern agreed to furnish "all labor, material, equipment, scaffolding, hoisting, transportation, insurance, and supervision necessary to fully perform and in every respect complete" construction of the structural steel, steel joists and steel deck on the Rehabilitation Hospital. *See* Purchase Order, Exhibit 1 hereto.

9. Pursuant to the Purchase Order, Southwestern further agreed to "provide all necessary labor and equipment (including scaffolding, transport and hoisting equipment) as required for a complete installation of work performed under this contract," to "furnish and install all safety cables and temporary handrails for all openings and unprotected edges as required by OSHA standards during the activities performed under this contract. Items shall remain in place until M.J.Harris, Inc. Superintendent accepts conditions for removal," and to perform "[a]ll work [per] OSHA regulations." *See* Purchase Order, paragraphs 8, 12 and 23, Ex. 1 hereto.

10. Southwestern also agreed in the Purchase Order that it would "[i]ndemnify and hold Purchaser and Owner harmless from and against all claims, suits, liability, damages, losses

3

and expenses, including reasonable attorney's fees, from injury to person or property, arising out of or relating to the work, materials and labor, if any, furnished under this purchase order, regardless of whether or not a party indemnified hereunder in part caused or was legally responsible for such injury. These indemnity obligations shall be in addition to any indemnity obligations in the Subcontract." The "Purchaser" in the order is M.J. Harris, Inc. *See* Purchase Order, Terms and Conditions No. 5, Ex. 1 hereto.

11. In the Subcontract signed by Southwestern on 2/21/07, Southwestern agreed that "[T]he Subcontractor shall indemnify, and hold harmless the Contractor, and the Owner and all their agents and employees from any and all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease, or death, or injury to or destruction of tangible property, . . . to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or any one directly or indirectly employed by him or for anyone whose acts he may be liable regardless of whether it is caused in part by a party indemnified under this Subcontract." *See* Subcontract, section 8, Exhibit 2 hereto.

12. Also according to Section 8. of the Subcontract, Southwestern agreed to "Prior to starting its work the Subcontractor shall submit to the Contractor a Certificate of Insurance, acceptable to the Contractor, evidencing the fact that the Subcontractor has obtained insurance from a licensed insurance company in the types and amounts as set forth herein. . . ." Southwestern agreed to obtain Commercial General Liability insurance, including Broad Form Property Damage and Contractual Liability (and X.C.U. when necessary), to cover bodily injury and property damage, with $1,000,000 per occurrence limits. Southwestern also agreed to obtain

Workers Compensation with Employer's Liability insurance with $1,000,000 per occurrence limits. *See* Subcontract, section 8, Ex. 2 hereto.

13. In the Subcontract's Exhibit "A", "Subcontractor Purchasing Clauses," Southwestern agreed that the "Certificate of Insurance shall add M.J. Harris, Inc. as additional insured and require 30 day notice before cancellation of the policy." *See* Subcontract, Exhibit "A", paragraph 11, Ex. 2 hereto.

*History of Insurance Coverage*

14. Based on its obligations in the Subcontract, Southwestern provided a Certificate of Insurance dated 5/14/07 to M.J. Harris that certified that Admiral Insurance Company issued its Commercial General Liability policy No. CA00007345-02, with a policy effective date of 7/1/06 through 7/1/07, with coverage limits of $1,000,000 per occurrence. M.J. Harris is listed as a certificate holder in the document.

15. Based on its continued obligations in the Subcontract, Southwestern provided an additional Certificate of Insurance dated 7/3/07 to M.J. Harris that certified that Admiral Insurance Company issued its Commercial General Liability policy No. CGL070107, with a policy effective date of 7/1/07 through 7/1/08, with coverage limits of $1,000,000 per occurrence. M.J. Harris is listed as a certificate holder in the document.

16. At no time after May 14, 2007 did Admiral Insurance provide any notice to M.J. Harris that Admiral's policies No. CA00007345-02 or No. CGL070107 had been cancelled during the period of Southwestern's performance of its contracted work on the Rehabilitation Hospital.

17. At all material times, Southwestern represented that it had fully complied with the insurance requirements of the Subcontract and its provisions.

18. M.J. Harris allowed Southwestern to proceed with its contracted construction work on the Rehabilitation Hospital with the representations that Southwestern had fully complied with the insurance requirements of the Subcontract and its provisions.

19. Upon information and belief, the policies issued by Admiral to Southwestern included M.J. Harris, Inc. as an additional insured as required by the Subcontract between Southwestern and M.J. Harris, Inc. Despite repeated requests made to it, Admiral has refused to provide a complete copy of the Admiral insurance policies to M.J. Harris, Inc. and Amerisure.

20. At all material times, M.J. Harris, Inc. maintained a separate liability insurance policy through Amerisure.

*Civil Lawsuit by Southwestern's Employee and Settlement*

21. On April 9, 2007, Southwestern's employee Gustavo Martinez was seriously injured while performing work as a welder for Southwestern on the Rehabilitation Hospital job site.

22. Mr. Martinez was injured when safety equipment was not utilized while Mr. Martinez was climbing down from the building after installing structural steel, joists and deck on the Rehabilitation Hospital. Mr. Martinez fell and landed on the ground 12 feet below.

23. As a result of his injuries while working for Southwestern, Mr. Martinez brought a civil lawsuit for bodily injury against M.J. Harris, Inc. and Michael Harris on January 22, 2008 in the Third Judicial District Court, State of New Mexico. Mr. Martinez was barred by New Mexico's worker's compensation statute from bringing a negligence action also against Southwestern, his employer.

24. In his civil lawsuit, Mr. Martinez alleged that M.J. Harris failed to provide Mr. Martinez with a safe place to work, failed to shut down Southwestern's work due to hazardous

wind conditions, and failed to provide safety lines to allow Mr. Martinez to "tie off" while working at heights.

25. M.J. Harris reported the lawsuit to Admiral, Amerisure and Southwestern.

26. Admiral and Southwestern declined to defend or indemnify M.J. Harris for Mr. Martinez's claims of bodily injury incurred during Mr. Martinez's work for Southwestern on the Rehabilitation Hospital job. Admiral also declined to participate in the mediation of Mr. Martinez's claims.

27. Amerisure agreed to defend M.J. Harris from Mr. Martinez's claims and ultimately obtained a settlement of Mr. Martinez's claims for bodily injury in exchange for a $550,000 payment.

28. Following Admiral's and Southwestern's repeated refusal to defend or indemnify M.J. Harris, Inc., M.J. Harris, Inc. and Amerisure resolved Mr. Martinez's claims through a settlement in order to avoid the costs and risks associated with a trial.

29. M.J. Harris and Amerisure have made repeated demands on Admiral and Southwestern to reimburse them for the attorney's fees, costs and indemnity payment made to resolve the bodily injury claims of Mr. Martinez, all of which totaled in excess of $550,000.

30. Admiral and Southwestern have repeatedly refused to pay for defense fees and costs and for any indemnity payment to M.J. Harris, Inc. and to Amerisure.

COUNT ONE- BREACH OF CONTRACT AGAINST ADMIRAL

31. M.J. Harris, Inc. and Amerisure hereby incorporate the averments contained in the foregoing paragraphs 1 through 30, inclusive, as if fully set forth herein.

32. M.J. Harris, Inc. assigned to Amerisure all subrogation or other rights to reimbursement for any payments made under the policy by Amerisure for M.J. Harris, Inc.

33. On information and belief, Southwestern contracted with Admiral for the respective insurance policies described in Paragraphs 14 through 19, above.

34. On information and belief, Southwestern contracted with Admiral to obtain insurance policies that allowed Southwestern to fully comply with the Subcontract between Southwestern and M.J. Harris, Inc.

35. On information and belief, the Admiral insurance policies include M.J. Harris, Inc. as an additional insured.

36. M.J. Harris, Inc. and Amerisure made demands on Admiral for defense and indemnity of M.J. Harris, Inc., and Admiral wrongfully failed to comply with its contractual obligations to defend and indemnify M.J. Harris, Inc.

37. M.J. Harris, Inc. performed all duties and obligations required of M.J. Harris, Inc. under the terms of the Admiral policies of insurance.

38 As a result of Admiral's breaches of its insurance policies, M.J. Harris, Inc. and Amerisure have incurred expenses and damages based on the attorney's fees and costs for defending Mr. Martinez's lawsuit, based on the settlement reached with Mr. Martinez, and based on attorney's fees and costs in pursuing the present litigation, plus prejudgment and postjudgment interest.

39 Admiral has failed to fulfill its obligations under the contracts of insurance existing between Southwestern, M.J. Harris, Inc. and Admiral. Admiral is in breach of its insurance agreements.

40. As a direct and proximate result of Admiral's actions, M.J. Harris, Inc. and Amerisure have suffered damages in an amount to be proven at trial.

41. Admiral's breach of contract was intentional, willful, reckless and wanton, entitling Plaintiffs to punitive damages.

42. Despite multiple demands, Admiral has failed and refused to pay M.J. Harris, Inc. and Amerisure the sums due. In accordance with §56-8-3 NMSA 1978, Plaintiffs are entitled to interest at the rate of fifteen (15) percent per annum on all unpaid amounts.

COUNT TWO – BREACH OF CONTRACT & CONTRACTUAL INDEMNIFICATION
AGAINST SOUTHWESTERN

43. M.J. Harris, Inc. and Amerisure hereby incorporate by reference the averments contained in Paragraphs 1 through 42 inclusive, as if fully set forth herein.

44. In the indemnity clauses of the Purchase Order and Subcontract with M.J. Harris, Inc. set forth at paragraphs 10 and 11 herein, Southwestern was obligated to indemnify and hold harmless M.J. Harris, Inc. for all claims, expenses and losses arising out of or resulting from the performance of Southwestern's work under the Subcontract, including attorney's fees and injury to a person.

45. Under the Purchase Order and Subcontract, Southwestern was responsible for erecting the structural steel on the job site, to supervise the work of its employees, and to provide the scaffolding and all safety cables and temporary handrails required by OSHA.

46. The claimed injuries to Southwestern's employee, Gustavo Martinez, arose out of or resulted from Southwestern's performance of its contracted work for M.J. Harris, Inc.

47. M.J. Harris, Inc. incurred attorney's fees and costs in defending itself from Mr. Martinez's lawsuit for personal injuries.

48. M.J. Harris, Inc. has demanded that Southwestern indemnify and hold harmless M.J. Harris, Inc. from the claims made by Southwestern's employee, Gustavo Martinez, and from the attorney's fees and costs it has incurred in defending Mr. Martinez's lawsuit.

9

49. Southwestern has failed to indemnify and hold harmless M.J. Harris, Inc. from Mr. Martinez's lawsuit.

50. As a result of Southwestern's breach of contract, M.J. Harris, Inc. and its assignee/subrogee, Amerisure, have incurred damages including, but not limited to, attorney's fees, costs and the loss of monies paid in settlement to Mr. Martinez.

51. Southwestern's breach of contract was willful and reckless, entitling M.J. Harris, Inc. and its assignee/subrogee, Amerisure, to an award of punitive damages.

52. Despite demands, Southwestern has failed and refused to pay M.J. Harris, Inc. and Amerisure the sums due. In accordance with §56-8-3 NMSA 1978, Plaintiffs are entitled to interest at the rate of fifteen (15) percent per annum on all unpaid amounts.

## COUNT THREE – TRADITIONAL & PROPORTIONAL COMMON LAW INDEMNIFICATION AGAINST SOUTHWESTERN

53. Plaintiffs hereby incorporate paragraphs 1 through 52, inclusive, as if fully set forth herein.

54. Southwestern actively caused its employee, Gustavo Martinez, to suffer injuries by failing to maintain a safe work place, and M.J. Harris, Inc.'s alleged conduct was only passive and not "in pari delicto" with that of Southwestern's conduct.

55. M.J. Harris, Inc. and its assignee/subrogee, Amerisure, have a right to common law or traditional indemnification from Southwestern for all amounts paid to defend and settle Gustavo Martinez's personal injury claims.

56. Pleading in the alternative to the extent necessary, M.J. Harris, Inc. and Amerisure have satisfied all claims for injury by Gustavo Martinez arising out of the accident, and Southwestern is liable to M.J. Harris, Inc. and its assignee/subrogee, Amerisure, for proportional indemnification for the defense and settlement of the personal injury claims.

## COUNT FOUR – BREACH OF CONTRACT AND NEGLIGENT FAILURE TO PROCURE INSURANCE AGAINST SOUTHWESTERN

57. Plaintiffs hereby incorporate paragraphs 1 through 56, inclusive, as if fully set forth herein.

58. Under the insurance clauses of the Subcontract and Purchase Order as referenced in Paragraphs 12 and 13 herein, Southwestern agreed to procure liability insurance in the amount of $1,000,000 per accident, and to add M.J. Harris, Inc. as an additional insured under the policy.

59. In the event that it is proven that Southwestern did not obtain a liability insurance policy as required by the Subcontract and Purchase Order, then Southwestern breached its contract, and also negligently failed to procure the required insurance policy.

60. M.J. Harris, Inc. and its assignee/subrogee, Amerisure, have incurred damages as a result of the breach of contract and negligent failure to procure insurance as required by the Subcontract and Purchase Order, including, but not limited to, attorney's fees, costs and monies paid in settlement of Gustavo Martinez's personal injury claims.

61. Southwestern's breach of contract and negligent failure to procure insurance were done willfully and recklessly, entitling Plaintiffs to an award of punitive damages.

## COUNT FIVE – BREACH OF THE COVENANTS OF GOOD FAITH AND FAIR DEALING AGAINST ADMIRAL AND SOUTHWESTERN

62. Plaintiffs hereby incorporate paragraphs 1 through 61, inclusive, as if fully set forth herein.

63. Southwestern and Admiral were required to perform their obligations under their respective Subcontract and Purchase Order and insurance policies in good faith, honestly, and in accordance with the standards of fair dealing under the surrounding circumstances.

64. Defendants breached the covenants of good faith and fair dealing by initially representing that they would protect and indemnify M.J. Harris, Inc. from personal injury claims such as Gustavo Martinez's and then failing to perform their agreements to do so.

65. M.J. Harris, Inc. is entitled to damages as a result of Defendants' breaches of the implied covenants of good faith and fair dealing.

66. The actions of Defendants in breaching the implied covenants of good faith and fair dealing were willful and reckless, entitling M.J. Harris, Inc. to punitive damages.

COUNT SIX – CONTRIBUTION AGAINST SOUTHWESTERN AND ADMIRAL

67. Plaintiffs hereby incorporate paragraphs 1 through 66, inclusive, as if fully set forth herein.

68. Admiral provided liability coverage for personal injury claims, like Gustavo Martinez's, made against M.J. Harris, Inc. arising out of Southwestern's contracted work for the Rehabilitation Hospital.

69. While M.J. Harris, Inc. denied liability for Gustavo Martinez's injury claims, M.J. Harris, Inc. demanded that Admiral participate in the defense and protection of M.J. Harris, Inc. from those claims, and Admiral refused to participate in the defense and protection of M.J. Harris, Inc.

70. While Southwestern owed contractual obligations to defend and hold harmless M.J. Harris, Inc. from personal injury claims, like Gustavo Martinez's, made against M.J. Harris, Inc. arising out of Southwestern's contracted work for the Rehabilitation Hospital, Southwestern failed to defend and protect M.J. Harris, Inc. from Mr. Martinez's claims.

71. Despite Southwestern's and Admiral's co-existing obligations to M.J. Harris, Inc., Amerisure stepped in to defend and protect M.J. Harris, Inc. from Gustavo Martinez's claims

while Southwestern and Admiral did not do so. Amerisure fully funded the settlement made with Gustavo Martinez for his personal injury claims.

72. The right to contribution exists where mutual contractual liability exists, and the Defendants are obligated to pay Amerisure for the defense of M.J. Harris, Inc. and for the monetary settlement paid to Gustavo Martinez.

COUNT SEVEN – EQUITABLE SUBROGATION/CONTRIBUTION AGAINST ADMIRAL

73. Plaintiffs hereby incorporate paragraphs 1 through 72, inclusive, as if fully set forth herein.

74. In New Mexico, a right to equitable subrogation exists if an insurance company pays a claim that should have been paid by another insurer.

75. Amerisure paid for the defense of M.J. Harris, Inc. in the lawsuit brought by Gustavo Martinez, and also paid for the settlement of Mr. Martinez's personal injury claim.

76. Amerisure is an equitable subrogee for payments it made to defend and indemnify M.J. Harris, Inc. from personal injury claims made by Southwestern's employee, Gustavo Martinez.

77. Admiral is liable to Amerisure for the defense and indemnity of M.J. Harris, Inc. which should have been paid by Admiral, in an amount to be determined at trial.

COUNT EIGHT – UNJUST ENRICHMENT

78. Plaintiffs hereby incorporate paragraphs 1 through 77, inclusive, as if fully set forth herein.

79. At times material hereto, Southwestern and Admiral were obligated to defend and protect M.J. Harris, Inc. from personal injury claims arising out of Southwestern's contracted services for the Rehabilitation Hospital.

80. Southwestern and Admiral have accepted the benefit of all payments made by M.J. Harris, Inc. under the Subcontract and Purchase Order, but have not provided the defense and indemnity protection for M.J. Harris, Inc. as required.

81. Amerisure has made payments to defend and indemnify M.J. Harris, Inc., and those payments should have been made by Southwestern and Admiral.

82. M.J. Harris, Inc. and Amerisure demanded reimbursement from Southwestern and Admiral for the payments made by Amerisure, but Southwestern and Admiral have refused to reimburse Amerisure.

83. The payments paid by Amerisure to defend and protect M.J. Harris, Inc. benefited Southwestern and Admiral, and Defendants have been unjustly enriched by failing to reimburse Amerisure for those payments.

84. It would be inequitable to allow Defendants to keep the benefit of Defendants' respective breaches of contract. Defendants have been unjustly enriched in an amount to be proven at trial.

### COUNT NINE—VIOLATION OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT AGAINST ADMIRAL

85. Plaintiffs hereby incorporate paragraphs 1 through 84, inclusive, as if fully set forth herein.

86. Admiral has violated provisions of the New Mexico Unfair Insurance Practices Act such as, but not limited to, Section 59A-16-20 by failing to defend and not agreeing to indemnify M.J. Harris, Inc. from the Gustavo Martinez lawsuit.

87. Admiral has also violated provisions of the New Mexico Unfair Insurance Practices Act by failing to respond to Plaintiffs' requests for a copy of the Admiral insurance policy and for information about the coverage provided by the policy.

88.     Admiral has knowingly committed, or performed with such frequency as to indicate a general business practice, misrepresentation to M.J. Harris, Inc. pertinent facts or policy provisions relating to coverage at issue, and compelling M.J. Harris, Inc. to institute litigation to recover and obtain what it is entitled to and what it has made claim for under Admiral's insurance policy in issue.

89.     As a proximate result of Admiral's statutory violations, M.J. Harris, Inc. and its assignee/subrogee Amerisure have suffered harm, including, but not limited to, the loss of monies paid for attorney's fees, costs, and the settlement made with Gustavo Martinez.

90.     Admiral has willfully violated the statutory provisions entitling M.J. Harris, Inc. and its assignee/subrogee, Amerisure, to treble damages.

91.     Based on Admiral's statutory violations, M.J. Harris, Inc. and its assignee/subrogee, Amerisure, are entitled to an award of their attorney's fees in bringing this Complaint.

### COUNT TEN—VIOLATION OF NEW MEXICO UNFAIR TRADE PRACTICES ACT AGAINST SOUTHWESTERN AND ADMIRAL

92.     Plaintiffs hereby incorporate paragraphs 1 through 91, inclusive, as if fully set forth herein.

93.     Southwestern and Admiral have violated provisions of the New Mexico Unfair Trade Practices Act including, but not limited to, §§ 57-12-1, 57-12-2, by failing to deliver the quality and quantity of goods or services contracted for pursuant to the Subcontract and Purchase Order entered into between Southwestern and M.J. Harris, Inc. and pursuant to the Admiral insurance policy in issue.

94. Southwestern and Admiral knew that the purpose of the contractual defense and indemnity protections for M.J. Harris, Inc. was to protect M.J. Harris, Inc. from personal injury claims arising out of Southwestern's work at the Rehabilitation Hospital.

95. By denying the protection and coverage expected by M.J. Harris, Inc. pursuant to the Subcontract and Purchase Order and Admiral's insurance policy, Southwestern and Admiral have deprived M.J. Harris, Inc. of the quality and quantity of goods and services that it had contracted for with them.

96. Defendants' actions constitute violations of the Unfair Trade Practices Act specifically, but not limited to, NMSA § 57-12-2(D)(17).

97. As a proximate result of Southwestern's and Admiral's statutory violations, M.J. Harris, Inc. and its assignee/subrogee, Amerisure, have suffered harm, and will continue to incur damages including, but not limited to, payment of attorney's fees, costs and other litigation related expenses.

98. Southwestern and Admiral have willfully violated the statutory provisions entitling M.J. Harris, Inc. and its assignee/subrogee, Amerisure, to treble damages pursuant to NMSA § 57-12-10(B).

99. Plaintiffs are entitled to attorney's fees pursuant to NMSA § 57-12-10(C).

WHEREFORE, Plaintiffs M.J. Harris, Inc. and Amerisure Indemnity Insurance Company pray for judgment against Defendants Southwestern Industrial Contractors and Riggers, Inc. and Admiral Insurance Company as follows:

A. For actual damages incurred by Plaintiffs as a result of the acts and omissions of Defendants described herein, including, but not limited to, reimbursement for M.J. Harris, Inc.'s

defense fees and costs in the lawsuit filed by Gustavo Martinez and reimbursement for the $550,000 paid to settle Gustavo Martinez's personal injury claims; and

    B.    For punitive damages in an amount that will deter Admiral Insurance Company and Southwestern Industrial Contractors and Riggers, Inc. from such wrongful conduct in the future and punish Defendants for their behavior as alleged in the Complaint; and

    C.    For treble damages for Defendants' willful statutory violations; and

    D.    For prejudgment interest at the rate of fifteen (15) percent per annum as provided for by § 56-8-3 NMSA 1978 from the date of the events giving rise to Plaintiffs' claims herein; or otherwise as allowed by law and

    E.    For post-judgment interest, attorney's fees, costs of suit, and such other and further remedy as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial.

Respectfully submitted,

CIVEROLO, GRALOW, HILL & CURTIS
A Professional Association

By: _____
Lisa Entress Pullen
William P. Gralow
Attorneys for Plaintiffs Amerisure Indemnity Ins.
Co. and M.J. Harris, Inc.
P. O. Drawer 887
Albuquerque, N.M. 87103-0887
505-842-8255