# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

AMERISURE MUTUAL INSURANCE
COMPANY, individually and as assignee/
subrogee of M.J. Harris, Inc., and M.J.
HARRIS, INC.,

          Plaintiffs,

v.                                No. CIV 10-1245 RB/WPL

ADMIRAL INSURANCE COMPANY and
SOUTHWESTERN INDUSTRIAL
CONTRACTORS AND RIGGERS, INC.,

          Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Southwestern Industrial Contractors and Riggers, Inc.'s Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. (Doc. 8.) Having considered the parties' memoranda, the relevant case law, and otherwise being fully informed, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Southwestern's Motion to Dismiss. The indemnity provisions of the parties' agreement are void, unenforceable, and contrary to New Mexico public policy and the New Mexico anti-indemnity statute insofar as they require Southwestern to indemnify Plaintiff M.J. Harris, Inc. for any claims, damages, losses, and expenses attributable to bodily injury arising out of or resulting from M.J. Harris' performance of the construction contract, to the extent the injuries resulted from M.J. Harris' negligent acts or omissions. The indemnity provisions are enforceable, however, to the extent they require Southwestern to indemnify M.J. Harris, Inc. for Southwestern's negligence.

## II.      PROCEDURAL HISTORY

On December 28, 2010, Plaintiffs Amerisure Mutual Insurance Company (Amerisure) and

M.J. Harris, Inc. (M.J. Harris) filed a Complaint alleging ten separate counts against Defendants

Admiral Insurance Company (Admiral) and Southwestern Industrial Contractors and Riggers, Inc.

(Southwestern).

| | |
|---|---|
| Count 1: | Breach of Contract - Admiral |
| Count 2: | Breach of Contract and Contractual Indemnification - Southwestern |
| Count 3: | Traditional and Proportional Common Law Indemnification - Southwestern |
| Count 4: | Breach of Contract and Negligent Failure to Procure Insurance - Southwestern |
| Count 5: | Breach of the Covenants of Good Faith and Fair Dealing - Southwestern and Admiral |
| Count 6: | Contribution - Southwestern and Admiral |
| Count 7: | Equitable Subrogation/Contribution - Admiral |
| Count 8: | Unjust Enrichment - Southwestern and Admiral |
| Count 9: | Violation of the New Mexico Unfair Insurance Practices Act - Admiral |
| Count 10: | Violation of New Mexico Unfair Trade Practices Act - Southwestern and Admiral |

(Complaint, Doc. 1.)  On February 11, 2011, Defendant Southwestern filed a Rule 12(b)(6) Motion

to Dismiss for Failure to State a Claim. (Doc. 8.)  On March 7, 2011, Plaintiffs filed a Response to

Southwestern's Motion to Dismiss. (Doc. 20.)  On March 28, 2011, Defendant Southwestern filed

a Reply. (Doc. 24.)

## III.    FACTUAL BACKGROUND

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

the Court must accept all well-pleaded factual allegations as true and view them in the light most

favorable to the non-moving party. *Moffett v. Haliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231

(10th Cir. 2002).   The Court need not, however, accept Plaintiffs' conclusory allegations. *Id.*

Accordingly, the following is a brief recitation of the facts of the case based on the non-conclusory,

factual allegations raised in the Complaint.

Plaintiff M.J. Harris, a construction company domiciled in Alabama, contracted to perform general contractor services for construction work on the Rehabilitation Hospital of Southern New Mexico. Plaintiff Amerisure, a Michigan-domiciled corporation, provided a commercial, general liability policy to M.J. Harris. M.J. Harris contracted with Defendant Southwestern, a Florida corporation with its principal place of business in El Paso, Texas, to perform construction work on the Rehabilitation Hospital's structural steel, steel joists, and steel deck. Defendant Admiral, a Delaware corporation, issued an insurance policy to Southwestern covering its work on the Rehabilitation Hospital. The Admiral policy included M.J. Harris as an additional insured.

On February 21, 2007, M.J. Harris and Southwestern entered into a written contract (Subcontract) for the provision of construction work on the Hospital. (Doc. 1-2; Ex. 2.) The Subcontract required Southwestern to indemnify M.J. Harris under the following circumstances:

> The Subcontractor shall indemnify, and hold harmless the Contractor, and the Owner and all their agents and employees from any and all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property, including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or any one directly or indirectly employed by him or for anyone whose acts he may be liable regardless of whether it is caused in part by a party indemnified under this Subcontract.

(Doc. 1-2 at 1, Sec. 8, underlining added.) On February 21, 2007, Harris and Southwestern additionally signed a Purchase Order which detailed the specific work and materials Southwestern was required to provide, including "all labor, material, equipment, scaffolding, hoisting, transportation, insurance, and supervision necessary to fully perform and complete" the construction and installation of the structural steel, steel joists, and steel deck for the Rehabilitation Hospital.

(Doc. 1-1 at 1; Ex. 1.)  The Purchase Order additionally required Southwestern to "[f]urnish and install all safety cables and temporary handrails for all openings and unprotected edges as required by OSHA standards during the activities performed under this contract." (Doc. 1-1 at 1, ¶ 12; Ex. 1.) The Purchase Order also included an indemnification clause:

> Vendor [Southwestern] <u>shall indemnify</u> and hold Purchaser [M.J. Harris] and Owner harmless from and <u>against all claims</u>, suits, liability, damages, losses, and expenses, including reasonable attorney's fees, <u>from injury to person</u> or property, arising out of or relating to the work, materials and labor, if any, furnished under this purchase order, <u>regardless of whether or not a party indemnified hereunder in part caused or was legally responsible for such injury</u>.  These indemnity obligations shall be in addition to any indemnity obligations in the Subcontract.

(Doc. 1-1 at 2, Terms and Conditions, ¶ 5, underlining added.)  Moreover, the Subcontract required Southwestern to obtain and submit a Certificate of Insurance demonstrating that M.J. Harris had been added as an additional insured (Doc. 1-2, Ex. A, ¶ 11), and that the company held workers' compensation insurance, commercial general liability insurance, broad form property damage insurance, and contractual liability insurance to cover bodily injury and property damage up to $1 million per occurrence (Doc. 1–2, Sec. 8).

Southwestern provided M.J. Harris with a Certificate of Insurance dated May 14, 2007, certifying that Admiral had issued a commercial general liability policy listing M.J. Harris as a certificate holder with effective dates of July 1, 2006 through July 1, 2007.  Southwestern additionally provided M.J. Harris a Certificate of Insurance dated July 3, 2007, certifying that Admiral had issued a commercial general liability policy listing M.J. Harris as a certificate holder with effective dates of July 1, 2007 through July 1, 2008.  Admiral never provided notice to M.J. Harris that these policies had been canceled or that it had been dropped as an insured. M.J. Harris additionally maintained a liability insurance policy through Amerisure.

On April 9, 2007, Southwestern employee Gustavo Martinez was seriously injured on the job while working as a welder on the Rehabilitation Hospital. After installing structural steel, joists, and deck, Mr. Martinez climbed down from the building without the aid of safety equipment. Mr. Martinez fell and landed on the ground approximately twelve feet below. As a result of the accident, Mr. Martinez filed a civil suit against M.J. Harris on January 22, 2008 for bodily injuries. Mr. Martinez alleged that M.J. Harris failed to provide him with a safe place to work, failed to shut down the work site due to hazardous wind conditions, and failed to provide safety lines to allow Mr. Martinez to tie off. Mr. Martinez also filed a workers' compensation claim against Southwestern.

Southwestern and its insurer, Admiral, declined to defend or indemnify M.J. Harris against Mr. Martinez' claims. Instead, Amerisure, with whom M.J. Harris maintained an additional liability insurance policy, defended M.J. Harris and ultimately resolved Mr. Martinez' claims through a settlement agreement for $550,000. Following the lawsuit, M.J. Harris and Amerisure made repeated demands on Admiral and Southwestern for their attorney's fees, legal costs, and indemnity payments. Admiral and Southwestern refused to pay. Plaintiffs thereafter filed a Complaint (Doc. 1) to recover the damages they allege they are owed by Defendants.

## IV.     RULE 12(B)(6) STANDARD

"[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.' " *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Accordingly, when reviewing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an

entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). This obligation to provide the factual "grounds" upon which the plaintiff is entitled to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In making its determination, the Court must accept all well-pleaded factual allegations as true, viewing them in the light most favorable to Plaintiffs, and drawing reasonable inferences therefrom. *Id.* at 555–56; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

## V. ANALYSIS

In its Motion to Dismiss, Defendant Southwestern requests the Court dismiss all ten counts of Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6). Defendant Southwestern argues (**A**) the New Mexico anti-indemnity statute, N.M. STAT. ANN. § 56-7-1, bars Plaintiffs from seeking contractual indemnity; (**B**) the anti-indemnity statute cannot be circumvented by requiring Southwestern to maintain insurance for M.J. Harris; (**C**) as a settling tortfeasor, Plaintiffs cannot seek contribution or indemnity from Southwestern as a non-settling tortfeasor; and (**D**) the New Mexico Workers' Compensation Act bars Plaintiffs from seeking common law contribution or indemnity from Southwestern, as its liability as an employer is limited to those rights and remedies provided in the Act. (Doc. 8.)

Plaintiffs respond that (**A**) Texas, not New Mexico law, should be applied to interpret the parties' agreement and the indemnity provisions contained therein; (**B**) even if New Mexico law is applied, the indemnity provisions do not violate New Mexico's anti-indemnity statute; (**C**) the parties' agreement requiring M.J. Harris to be listed as an additional insured does not violate New Mexico's anti-indemnity statute; and (**D**) Southwestern's arguments concerning comparative fault

are premature, as the Court does not have evidence before it of the nature and scope of Mr. Martinez' claims or the terms of M.J. Harris' settlement with Mr. Martinez. (Doc. 20.)

## A.     New Mexico Anti-Indemnity Statute

First, Defendant Southwestern argues that Plaintiffs' claims for breach of contract and contractual indemnification (Counts 1 and 2) must be dismissed as the indemnity provisions are void, unenforceable, and contrary to New Mexico public policy. (Doc. 8 at 6–11.) Plaintiffs respond that Texas law should be applied to interpret the contracts, but even if New Mexico law applies, the indemnity provisions are enforceable. (Doc. 20 at 3–8.)

"When, as here, a federal court sits in diversity, it must apply the substantive law of the state in which it sits." *Maya v. General Motors Corp.*, 953 F. Supp. 1245, 1247 (D.N.M. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "This includes applying the state choice of law rules." *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 217 (10th Cir.1992). When interpreting contracts, New Mexico courts apply the principle of *lex loci contractus*, meaning that they apply the law of the place where the contract was executed. *Id.* at 217; *State Farm Mut. Auto. Ins. Co. v. Ballard*, 2002-NMSC-030, ¶ 7, 132 N.M. 696, 54 P.3d 537. The parties do not contest that the Subcontract and Purchase Order were executed in Texas. Accordingly, Plaintiffs argue their agreement should be interpreted according to the laws of Texas, which require risk-shifting indemnity clauses to be enforced, provided the contract clearly states one party's intent to indemnify the other and the indemnity provision is conspicuous, or the indemnitor had actual notice or knowledge of the indemnity agreement. *Littlefield v. Schaefer*, 995 S.W.2d 272, 274 (Tex. 1997); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993); *Cate v. Dover Corp.*, 790 S.W. 2d 559, 561 (Tex. 1990); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987); *Powerhouse*

*Serv. Inc. v. Bechtel Corp.*, 108 S.W.3d 322, 326 (Tex. Ct. App. 2002); *Coastal Transport Co. v. Crown Central Petroleum Corp.*, 20 S.W.3d 119, 126 (Tex. Ct. App. 2000). Defendant Southwestern does not contest that the indemnity agreement would be enforceable under Texas law.

Southwestern, nevertheless, argues that Texas law should not apply because the indemnity agreement is void and unenforceable as contrary to New Mexico public policy. For certain contracts, the rule of *lex loci contractus* may be overcome where there exists "a countervailing interest that is fundamental and separate from general policies of contract interpretation" such that application of the law of the state of contracting would result in a violation of "fundamental principles of justice." *Shope v. State Farm Ins. Co.*, 1996-NMSC-052, ¶¶ 7– 9, 122 N.M. 398, 925 P.2d 515; *see also State Farm Mut. Auto. Ins. Co. v. Ballard*, 2002-NMSC-030, ¶ 9, 132 N.M. 696, 54 P.3d 537 (concluding that the Court must apply New Mexico law where application of the law of another state would "result in a violation of fundamental principles of justice"). Generally, such public policy exceptions are used "sparingly" and "only in 'extremely limited' circumstances"; however, New Mexico courts have applied a "somewhat lower threshold" where the safety or interests of the State's citizens who are not party to the contract are concerned. *Tucker*, 956 F.2d at 218–19 (citing *Sandoval v. Valdez*, 580 P.2d 131, 133 (N.M. Ct. App. 1978) ("The validity of a contract executed in a sister state will be determined according to the laws of such state unless such construction conflicts with some settled policy of the jurisdiction of the forum.")).

For contracts governing oil and gas wells and construction projects[1] to be performed within the state, New Mexico law limits the use of indemnity provisions, making such clauses void and

---

1. A "construction contract" is defined as a "public, private, foreign, or domestic contract or agreement relating to construction, alteration, repair or maintenance of any real property in New Mexico . . . ." N.M. STAT. ANN. § 56-7-1(E). The parties do not dispute that the parties' agreement constitutes a construction contract subject to the provisions of Section 56-7-1.

unenforceable where they contravene New Mexico public policy, even if the provisions are otherwise valid in the state where the contract was executed. *See* N.M. STAT. ANN. § 56-7-1 and § 56-7-2; *Piña v. Gruy Petroleum Mgmt. Co.*, 2006-NMCA-063, ¶¶ 20–21, 139 N.M. 619, 136 P.3d 1029 (holding that "the Texas anti-indemnity statute is fundamentally inconsistent with important New Mexico public policy as expressed in Section 56-7-2"). "The purpose of the anti-indemnity statute is to protect construction workers and future occupants of a building by ensuring that all those involved in its construction know that they will be held financially liable for their negligence." *Tucker*, 956 F.2d at 218. Accordingly, general contractors "will not be allowed to delegate to subcontractors [their] duty to see that the [construction site] is safe." *Guitard v. Gulf Oil Co.*, 670 P.2d 969, 972–73 (N.M. Ct. App. 1983)). By making indemnity agreements relieving one party of its liability unenforceable, both parties "will have incentive to monitor the safety of the operation knowing that they will be responsible for their respective percentage of negligence." *Id*. at 973.

Not all indemnity clauses, however, are rendered void and unenforceable by this law, and indemnity clauses that are partially valid can be enforced to the extent that they do not violate public policy: indemnity clauses "can be enforced to the extent that those clauses require the [subcontractor] to indemnify the [general contractor/owner] for liability arising out of the [subcontractor's] negligence." *Holguin v. Fulco Oil Servs. L.L.C.*, 2010-NMCA-091, ¶ 44, 149 N.M. 98, 245 P.3d 42, *cert granted*, 2010-NMCERT-10, 149 N.M. 65, 243 P.3d 1147. The New Mexico anti-indemnity statute imposes the following limitations on indemnity clauses in construction contracts:

> A. A <u>provision in a construction contract that requires one party</u> to the contract <u>to indemnify</u>, hold harmless, insure or defend the other party to the contract, including the other party's employees or agents, <u>against liability</u>, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or

damage to property <u>caused by or resulting from, in whole or in part, the negligence, act or omission of the indemnitee</u> [M.J. Harris], its officers, employees or agents, <u>is void, unenforceable and against the public policy of the state.</u>

    B.  A <u>construction contract</u> may contain a provision that, or <u>shall be enforced only to the extent that,</u> it:

        (1)  <u>requires one party to the contract to indemnify,</u> hold harmless or insure the other party to the contract, including its officers, employees or agents, <u>against liability,</u> claims, damages, losses or expenses, including attorney fees, <u>only to the extent that the liability, damages, losses or costs are caused by, or arise out of, the acts or omissions of the indemnitor</u> [Southwestern] or its officers, employees or agents; or

        (2)  <u>requires a party to the contract to purchase a project-specific insurance policy,</u> including an owner's or contractor's protective insurance, project management protective liability insurance or builder's risk insurance.

N.M. STAT. ANN. § 56-7-1(A)–(B) (underlining added).  The plain text of the statute permits contract provisions requiring a subcontractor to indemnify or defend the general contractor to the extent of the subcontractor's negligence.  Provided the contract does not require the subcontractor to indemnify the general contractor for the general contractor's percentage of the negligence, the public policy goal of promoting safety in the workplace is satisfied by encouraging both parties to monitor safety at the work site. *City of Albuquerque v. BPLW Architects & Engineers, Inc.*, 2009-NMCA-081, ¶ 20, 146 N.M. 717, 213 P.3d 1146; *Guitard*, 670 P.2d at 972 ("indemnitee cannot contract away liability for his own percentage of negligence").  What are not permitted, however, are contract provisions "which attempt to indemnify the indemnitee for any loss arising in whole or in part from the indemnitee's negligence." *Sierra v. Garcia*, 746 P.2d 1105, 1108 (N.M. 1987).

      In the case at hand, the Subcontract's indemnification clause provides, in pertinent part, that Southwestern must indemnify M.J. Harris "from any and all claims . . . arising out of or resulting from the performance of the Subcontractor's work . . . to the extent caused in whole or in part by any negligent act or omission of the Subcontractor . . . regardless of whether it is caused in part by a

party indemnified under this Subcontract." (Doc. 1-2, Ex. 2, Sec. 8.) The Subcontract does not violate New Mexico public policy by requiring Southwestern to indemnify M.J. Harris to the extent Southwestern's negligence caused the injury. Accordingly, this part of the indemnity provision comports with New Mexico's anti-indemnity statute. The second part of the indemnity provision, however—which requires Southwestern to indemnify M.J. Harris for a negligent act or omission "regardless of whether it is caused in part by a party indemnified under [the] Subcontract"—does not comport with New Mexico's anti-indemnity statute, as it may require Southwestern to indemnify M.J. Harris for the indemnitee's negligence. *Holguin*, 2010-NMCA-091, ¶ 39, 149 N.M. 98, 245 P.3d 42. Further, the Purchase Order's indemnification clause provides that Southwestern shall indemnify M.J. Harris "against all claims . . . from injury to person or property, arising out of or relating to the work, materials and labor . . . furnished under this purchase order, regardless of whether or not a party indemnified hereunder in part caused or was legally responsible for such injury." (Doc. 1-1 at 2, Terms and Conditions ¶ 5.) This clause requires Southwestern to indemnify M.J. Harris for claims arising from the indemnitee's negligence, and therefore, it is void and unenforceable under N.M. STAT. ANN. § 56-7-1.

Having found some parts of the parties' indemnification agreement void, unenforceable, and contrary to public policy, the Court must consider the effect on the parties' agreement. The Court can void the entire indemnification agreement, or, it can interpret the contract to give effect to those provisions that do not violate New Mexico's anti-indemnity statute. New Mexico case law instructs the Court to "not interpret a contract such that [its] interpretation of a particular clause or provision will annul other parts of the document, unless there is no other reasonable interpretation." *Public Service Co. of New Mexico v. Diamond D Const. Co., Inc.*, 2001 -NMCA- 082, 131 N.M. 100, 33

P.3d 651 (N.M. Ct. App. 2001).  Texas law also favors this approach, promoting contract validity

and requiring courts give effect to all contract provisions when possible. *Lavaca Bay Autoworld,*

*L.L.C. v. Marshall Pontiac Buick Oldsmobile*, 103 S.W.3d 650, 657 (Tex. Ct. App. 2003).

Accordingly, the Court should interpret the indemnity provisions and the contracts to give as much

effect to the parties' agreement as possible.  In other words, the Court should invalidate only those

provisions that are contrary to the New Mexico anti-indemnity statute. *Holguin*, 2010-NMCA-091,

¶ 40, 149 N.M. 98, 245 P.3d 42.[2] This approach encourages both freedom of contract and job safety.

*Id*. at ¶ 42.

New Mexico's anti-indemnity statute requires that "[a] construction contract . . . shall be

enforced only to the extent that, it . . . requires one party to the contract to indemnify . . . the other

party . . . to the extent that the liability, damages, losses or costs are caused by, or arise out of, the

acts or omissions of the indemnitor . . . ." N.M. STAT. ANN. § 56-7-1(B).  Like the indemnity

provision in *Holguin*, in the case at hand, the Subcontract's indemnity provision is partly void.

Voiding the clauses that are contrary to New Mexico public policy, the remaining provisions require

Southwestern to indemnify M.J. Harris for claims arising out of Southwestern's work on the project,

to the extent caused by the negligent acts or omissions of Southwestern. (Doc. 1-2 at 1, Sec. 8.)  This

---

2. The New Mexico Supreme Court granted certiorari in this case. 2010-NMCERT-10, 149 N.M. 65, 243 P.3d 1147.  It is possible this is due to the fact that the New Mexico Court of Appeals concluded that the remaining provisions of the indemnity clause were enforceable, rather than concluding that the entire clause or contract was void and unenforceable. *See Sierra v. Garcia*, 746 P.2d 1105, 1108 (N.M. 1987) (rejecting an appeal to reform the contract and holding that the indemnity agreement was void in its entirety).  In *Holguin*, the Court of Appeals concluded that the Supreme Court's holding in *Sierra* was no longer applicable because the Court applied the 1971 version of the New Mexico anti-indemnity statute before section 56-7-1(B) was added as part of the 2003 amendments to the statute. 2010-NMCA-091, ¶ 40.  Accordingly, the Court of Appeals concluded that "Section 56-7-1(B) specifically permits enforcement of an indemnity clause to the extent that it provides for indemnification from the indemnifying party's negligence." *Id*.  This is a valid interpretation of the statute and promotes freedom of contract; however, the fact the New Mexico Supreme Court granted certiorari is concerning. *But see J.R. Hale Contracting Co., Inc. v. Union Pacific R.R.*, 2008-NMCA-037, ¶ 64, 143 N.M. 574, 179 P.3d 579 (concluding that the indemnity agreement should not be voided in its entirety because it "does not have the defect present in *Sierra*, in which the agreement could not be parsed or read in any way to eliminate the indemnity for any loss arising in whole or in part from the indemnitee's own negligence").

requirement is valid under Section 56-7-1(B). Southwestern cannot, however, be required to indemnify M.J. Harris for claims that are caused in whole or in part by the indemnitee, M.J. Harris. (Doc. 1-2 at 1, Sec. 8.) This second part of the indemnity clause is void and unenforceable. *See, e.g.*, *Holguin*, 2010-NMCA-091, ¶ 39, 149 N.M. 98, 245 P.3d 42; *Amoco Prod. Co. v. Action Well Service, Inc.*, 755 P.2d 52, 53–54 (N.M. 1988). Each party must bear the liability for its own negligence. *Guitard*, 670 P.2d at 973.

In sum, the parties' agreement can be interpreted to comply with the New Mexico anti-indemnity statute by limiting Southwestern's contractual obligations to indemnify M.J. Harris only for Southwestern's percentage of the negligence. Such a requirement does not conflict with New Mexico's anti-indemnity statute and the state's public policy of ensuring a safe work site. Accordingly, Southwestern has a contractual duty to indemnify M.J. Harris for any claims arising out of the performance of the parties' agreement to the extent of Southwestern's negligent acts, errors, or omissions. *See City of Albuquerque v. BPLW Architects & Engineers, Inc.*, 2009-NMCA-081, ¶ 15, 146 N.M. 717, 213 P.3d 1146 ("BPLW has a duty to defend the City, even if only the City is alleged to be negligent, as long as the cause of action arises from the alleged negligent act, error, or omission of BPLW.").

## B. Insurance Requirement

Next, Southwestern argues that the contract provisions requiring it to secure insurance and name M.J. Harris as an additional insured are contrary to the New Mexico anti-indemnity statute, as these provisions circumvent the statute by requiring Southwestern to secure insurance coverage for the sole purpose of indemnification. (Doc. 8 at 7–10.) Plaintiffs respond that the provisions are valid under Texas law, and even if the Court were to exam the issue under New Mexico law, they

are valid as the New Mexico anti-indemnity statute only restricts the obligation to name an indemnified party as an additional insured when the insurance is to cover the indemnitee's own negligence. (Doc. 20 at 11–16.)

The Subcontract requires Southwestern to obtain and submit a Certificate of Insurance demonstrating it secured workers' compensation insurance, commercial general liability insurance, broad form property damage insurance, and contractual liability insurance to cover bodily injury and property damage up to $1 million per occurrence. (Doc. 1-2 at 2, Sec. 8.) Exhibit A to the Subcontract additionally requires Southwestern to provide a Certificate of Insurance demonstrating that M.J. Harris was added as an additional insured. (Doc. 1-2 at 3, ¶ 11.) Under Section 56-7-1(B), "[a] construction contract may contain a provision that . . . requires a party to the contract to purchase a project-specific insurance policy, including an owner's or contractor's protective insurance, project management protective liability insurance or builder's risk insurance." Under Section 57-7-1(A), however, "[a] provision in a construction contract that requires one party to . . . *insure* . . . the other party . . . against liability, claims, damages, losses or expenses . . . caused by or resulting from, in whole or in part, the negligence, act or omission of the indemnitee . . . is void, unenforceable and against the public policy of the state." (emphasis added). Furthermore, under Section 56-7-1(F), to unlawfully " 'indemnify' or 'hold harmless' includes any requirement to name the indemnified party as an *additional insured* in the indemnitor's insurance coverage for the purpose of providing indemnification for any liability not otherwise allowed . . . ." (emphasis added). Consequently, the provision requiring Southwestern to add M.J. Harris as an additional insured is void, unenforceable, and against New Mexico public policy to the extent that it constitutes an alternative means of indemnifying M.J. Harris for the indemnitee's negligence.

14

Yet, the statute does not forbid a construction contract from requiring that a party obtain liability insurance for a particular construction project, or that it require an indemnitee be named as an additional insured for the purpose of providing insurance for the indemnitor's negligence. Accordingly, the parties' agreement is valid insofar as it requires Southwestern to purchase insurance to protect M.J. Harris against Southwestern's respective share of the liability for any negligent acts or omissions arising out of Southwestern's performance of the contract and work completed on the Rehabilitation Hospital. *See City of Albuquerque, Inc.*, 2009-NMCA-081, ¶ 20 ("requiring BPLW to fulfill its contractual obligation to defend the City against any suit against the City arising out of BPLW's alleged negligence in the performance of the contract does not violate Section 56-7-1 or the policy behind it").[3]

### C.    New Mexico's Comparative Fault Negligence System and the Inherently Dangerous Activity Exception

Defendant Southwestern further argues that under New Mexico's pure comparative fault system, any common law claims for contribution or indemnity against Defendants (Counts 3, 6, and 7) are not permitted. (Doc. 8 at 11–13.) Plaintiffs respond that under the public policy exception to several liability of N.M. STAT. ANN. § 41-3A-1(C)(4), New Mexico tort law requires the

---

3. Arguing that New Mexico tort law permits a negligence suit against Defendants, Plaintiffs assert that in *City of Albuquerque v. BPLW*, the New Mexico Court of Appeals "allowed an indemnity claim against the government contractor to be made for the costs of defense of a claim against the city even though the injured party sued the city in negligence." (Doc. 20 at 10.) Plaintiffs completely misstate the City's cause of action in this case. While the court did consider BPLW's negligence, it did so only in the context of the indemnity agreement, which required "BPLW to defend the City from any action 'arising out of or resulting from any negligent act, error, or omission of [BPLW] . . . arising out of the performance of' the contract." *Id*. at ¶ 22. The City's cause of action against BPLW, however, was purely contractual: the City alleged that "BPLW had a contractual duty to defend and indemnify the City for any cause of action arising out of BPLW's performance of the contract." *Id*. at ¶ 4 (emphasis added). A determination of BPLW's negligence was relevant because the company was only required to indemnify or defend the City for the claims brought against it by a third party if BPLW had acted negligently. Likewise, if the present case proceeds to trial, a factfinder will have to make a determination whether Southwestern acted negligently. If there was no negligence, then Southwestern cannot be found to have breached its contract because, under New Mexico law, Southwestern can only be required to indemnify or defend Plaintiffs to the extent of Southwestern's negligence.

imposition of joint and several liability between a general contractor and a subcontractor when the work constitutes an inherently dangerous activity, such as the case at hand. (Doc. 20 at 9–10.) Defendant replies that under N.M. STAT. ANN. § 41-3-2(C), a settling joint tortfeasor is not entitled to contribution from other joint tortfeasors whose liability was not extinguished by the settlement, as Plaintiffs' settlement constituted a settlement of only their liability. (Doc. 24 at 9–10.)

The New Mexico courts' adoption of a pure comparative negligence system "resulted in the abolition of the doctrine of joint and several liability between defendants." *Gulf Ins. Co. v. Cottone*, 2006-NMCA-150, ¶ 12, 140 N.M. 728, 148 P.3d 814 (citing *Scott v. Rizzo*, 634 P.2d 1234, 1236–37 (N.M. 1981) (adopting pure comparative negligence); *Bartlett v. N.M. Welding Supply, Inc.*, 646 P.2d 579, 581–86 (N.M. Ct. App. 1982) (abolishing joint and several liability between concurrent tortfeasors)). The New Mexico Legislature abolished joint and several liability by statute in 1987, except in a limited number of circumstances. N.M. STAT. ANN. § 41-3A-1(A). Joint and several liability continues to apply in the following situations:

> (1) to any person or persons who acted with the intention of inflicting injury or damage;
> (2) to any persons whose relationship to each other would make one person vicariously liable for the acts of the other, but only to that portion of the total liability attributed to those persons;
> (3) to any persons strictly liable for the manufacture and sale of a defective product, but only to that portion of the total liability attributed to those persons; or
> (4) <u>to situations not covered by any of the foregoing and having a sound basis in public policy</u>.

N.M. Stat. Ann. § 41-3A-1(C) (underlining added). Citing to *Saiz v. Belen School District*, 827 P.2d 102 (N.M. 1992) and *Tipton v. Texaco, Inc.*, 712 P.2d 1351 (N.M. 1985), Plaintiffs argue that joint and several liability applies in the case at hand because the New Mexico Supreme Court has recognized a public policy exception in the case of inherently dangerous activities, such as the work

Southwestern contracted to perform. (Doc. 20 at 9–10.)

Indeed, in *Saiz*, 827 P.2d at 115, the New Mexico Supreme Court recognized an exception to the rule of several liability for inherently dangerous activities under the public policy grounds subsection of N.M. STAT. ANN. § 41-3A-1(C), holding that "when precautions are not taken against inherent danger, the employer is jointly and severally liable for harm apportioned to any independent contractor for failure to take precautions reasonably necessary to prevent injury to third parties arising from the peculiar risk." In *Saiz*, the inherent danger against which the court sought to protect the public was an underground high-voltage electrical cable installed directly in front of the bleachers of a high school football stadium to provide nighttime illumination. *Id*. at 113. The court concluded that "[t]he hazard is distinctly different from hazards to which persons commonly are subjected to—it represents a very special danger or peculiar risk." *Id*. By holding the school district (employer) jointly and severally liable with the independent contractors (engineer, architect, and electrical contractor) who had designed and installed the high-voltage electrical line, the court sought "to encourage conscientious adherence to standards of safety where injury likely will result in the absence of precautions." *Id*. at 400.

The same reasoning applies to the case at hand where M.J. Harris hired Southwestern and its employees to install structural steel, joists, and deck during the construction of the Rehabilitation Hospital. M.J. Harris should have recognized that the work created "a peculiar risk of physical harm to others unless reasonable precautions [were] taken," and therefore, the "employer cannot delegate the responsibility for taking the precautions" to the independent contractor. *Id*. at 110. While there is no New Mexico case law directly supporting the imposition of joint and several liability for employers of independent contractors performing steel work at dangerous heights, this seems the

type of inherently dangerous activity where public policy would dictate the imposition of joint and several liability. And if joint and several liability applies, Plaintiffs are entitled to seek contribution. *See Gulf Ins. Co.*, 2006-NMCA-150, ¶ 15 ("Where joint and several liability applies, each tortfeasor is liable for the entire injury, regardless of proportionate fault, leaving the defendants to sort out among themselves individual responsibilities based on proportional indemnification or contribution.").

Nevertheless, under the New Mexico statute, "[a] joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement." N.M. STAT. ANN. § 41-3-2(C); *see also Wilson v. Galt*, 668 P.2d 1104, 1109 (N.M. Ct. App. 1983). The term "joint tortfeasors" is defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.M. STAT. ANN. § 41-3-1. Southwestern and M.J. Harris constitute joint tortfeasors, and there is no indication that Southwestern's liability was extinguished by the settlement. Accordingly, it appears that Section 41-3-2(C) applies to the case at hand. Application of the this statute also complies with the New Mexico courts' policy concerning settlements by joint tortfeasors.

> If the setting tortfeasor paid more in settlement than his apportioned share of the total damages as determined, the injured person, without reduction, would retain the benefit of the contractually made bargain. On the other hand, if the settlement turned out to be less, the injured person could not recover the shortfall either from the settling tortfeasor, or the others.

*Wilson*, 668 P.2d at 1109. This approach is favored because it encourages settlements and allows a tortfeasor to buy his peace of mind. *Id.* In sum, although joint and several liability applies due to the inherently dangerous nature of the work Southwestern was contracted to perform, M.J. Harris

is not entitled to seek contribution because it settled its claims with Mr. Martinez.

**D.    Workers' Compensation Act**

Next, Defendant argues that any common law claims for contribution or indemnification (Counts 3 and 6) against Southwestern arising out of Mr. Martinez' work-related injuries are barred by the Workers' Compensation Act, which limits the liability of an employer to those rights and remedies provided for in the Act. (Doc. 8 at 13–14.)  Plaintiffs respond that New Mexico's Workers Compensation Act does not bar indemnity claims based on an express indemnity agreement. (Doc. 20 at 17–19.)  Southwestern replies that at no time did it assert the New Mexico Workers' Compensation Act barred Plaintiffs' contractual indemnity claims; rather, Southwestern argues that the common law contribution and indemnity claims are barred by the Act. (Doc. 24 at 10–12.)

Both parties agree that an employer can contract around the protections of the Workers Compensation Act without offending public policy concerns. *City of Artesia v. Carter*, 610 P.2d 198, 201 (N.M. Ct. App. 1980) ("If the employer desires to voluntarily relinquish his statutory protection, he may do so.").  Notwithstanding the validity of Plaintiffs' contractual indemnity claims, Southwestern argues the New Mexico Workers' Compensation Act precludes Plaintiffs' common law contribution and indemnity claims.  N.M. STAT. ANN. § 52-1-8 provides the following:

> Any employer who has complied with the provisions of the Workmen's compensation Act . . . shall not be subject to any other liability whatsoever for the death of or personal injury to any employee . . . , and all causes of action, actions at law, suits in equity and proceedings whatever, and all statutory and common-law rights and remedies for and on account of such death of, or personal injury to, any such employee and accruing to any and all persons whomsoever, are hereby abolished except as provided in the Workmen's Compensation Act.

The Act therefore provides a broad limitation on an employer's liability for the death or injury of an employee, including common law suits for contribution and indemnity, unless the parties have

contracted around its provisions. *See City of Artesia*, 610 P.2d at 199. Plaintiffs do not contest this reading of the New Mexico Workers' Compensation Act.

Plaintiffs do, however, suggest that it may be premature to address this issue because it has not been established whether Mr. Martinez elected between the Texas or New Mexico worker's compensation system for benefits; if he elected Texas, Plaintiffs argue the Court must examine Texas' worker's compensation policies. (Doc. 20 at 19.) Defendant replies that this argument is misguided because under N.M. Stat. Ann. § 52-1-2, every corporation engaged in business in the state, and which employs more than three workers, is required to pay benefits to a worker injured in a work-related accident. (Doc. 24 at 10.) Under *Hammonds v. Freymiller Trucking, Inc.*, 851 P.2d 486, 490–92 (N.M. Ct. App. 1993), New Mexico clearly has jurisdiction over Mr. Martinez' workers' compensation claim arising out of his work on the Rehabilitation Hospital by virtue of M.J. Harris' activities in the state. Nevertheless, in *Hammonds*, 851 P.2d at 491, the New Mexico Court of Appeals additionally recognized that multiple states may have jurisdiction over a single workers' compensation claim. Thus, the fact that a particular remedy is not available to a worker under New Mexico law does not mean that he or she could not pursue it in another jurisdiction.

Without jumping into a choice of law analysis, the Court notes that Texas has a similar exclusivity provision to New Mexico, which bars common law causes of action by employees against their employers, as well as indemnity and contribution claims from third parties. *Phillips v. Am. Elastomer Prods., L.L.C.*, 316 S.W.3d 181, 186 (Tex. Ct. App. 2010) ("Under the TWCA, a subscriber employer is protected by the Act's exclusive remedy provision, which bars common-law causes of actions by its injured employees." (citing TEX. LABOR CODE ANN. § 408.001(a))); *Lee Lewis Const., Inc. v. Harrison*, 64 S.W.3d 1, 19–20 (Tex. Ct. App. 1999) (concluding that

exclusivity provision shields employer from indemnity and contribution claims). Furthermore, under Texas law—and in almost all jurisdictions—common law indemnity between joint tortfeasors has been abolished. *Aviation Office of America, Inc. v. Alexander & Alexander of Texas, Inc.*, 751 S.W.2d 179, 180 (Tex. 1988). Accordingly, whether the Court applies New Mexico or Texas law, the results should not differ. Both states block common law contribution and indemnity claims where an employer participates in the workers' compensation system. As the Complaint does not allege that Southwestern failed to provide workers' compensation coverage for Mr. Martinez, Plaintiffs are barred from asserting common law claims for contribution or indemnification arising out of Mr. Martinez' work-related injuries. This does not, however, impact Plaintiffs' contractual indemnity claims.

### E. Covenants of Good Faith and Fair Dealing

Defendant Southwestern argues that Plaintiffs' claim for breach of the covenants of good faith and fair dealing (Count 5) must be dismissed because Plaintiffs rely on the contracts' prohibited indemnity and insurance provisions. (Doc. 8 at 8–9.) As the indemnity and insurance provisions can be enforced to the extent of Southwestern's negligence, this argument must fail. Under New Mexico law, there exists an implied duty of good faith and fair dealing in every contract. *Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004, ¶ 13, 124 N.M. 613, 954 P.2d 45. "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 82 (N.M. 1993). Bad faith exists where a party's conduct "constitutes a 'wanton disregard' for the nonbreaching party's rights." *Paiz v. State Farm Fire and Cas. Co.*, 880 P.2d 300, 310 (N.M. 1994). Plaintiffs allege that Southwestern and Admiral willfully and recklessly refused

to indemnify or defend M.J. Harris from Mr. Martinez' personal injury claims as required by the parties' agreement after initially representing that they would protect and indemnify M.J. Harris. (Compl. ¶ 64–66.)  Plaintiffs assert that after repeated demands from M.J. Harris and Amerisure, Defendants refused to reimburse them for the defense of settlement. (Compl. ¶ 29.)  Given that the indemnity agreement is enforceable to the extent that it requires Defendants to indemnify or defend M.J. Harris for Southwestern's share of the negligence in causing Mr. Martinez' injuries, Plaintiffs have stated a plausible claim for breach of contract.  Plaintiffs now argue that this breach was willful and reckless, constituting bad faith.  Based on the allegations of the Complaint, it appears that Plaintiffs have stated a plausible claim for relief for breach of the covenants of good faith and fair dealing.

### F.      Equitable Subrogation/Contribution

Next, Southwestern argues that Plaintiffs' claim for equitable subrogation/contribution (Count 7) must be dismissed because this cause of action relies on the contracts' prohibited indemnity and insurance provisions. (Doc. 8 at 8–9.)  Once again, this argument must fail, as the indemnity and insurance provisions of the contract can be enforced to the extent of Southwestern's negligence.  "Subrogation encompasses the right of an insurance company, who has paid an insured's claim, to step into the shoes of its insured and pursue recovery from the party who is legally responsible for the insured's losses." *Sw. Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 2006-NMCA-151, ¶ 7, 140 N.M. 720, 148 P.3d 806 (N.M. Ct. App. 2006).  Similarly, "[e]quitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss." *Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*, 97 Cal. Rptr. 2d 374, 377 (2000).  Defendant

Southwestern has presented no argument that equitable subrogation/contribution between the two insurance companies—Admiral and Amerisure—should not apply in the case at hand.

### G. Unjust Enrichment

Southwestern argues that Plaintiffs' claim against Admiral and Southwestern for unjust enrichment (Count 8) must be dismissed because this cause of action relies on the contracts' prohibited indemnity and insurance provisions. (Doc. 8 at 8–9.) As the indemnity provisions are enforceable to the extent of Defendant's negligence, this argument must fail. To bring a claim for unjust enrichment, a party must show "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200, 3 P.3d 695. "However, this equitable remedy should not take the place of a remedy at law; rather, it augments legal remedies." *John D. Arnold Family Ltd. Partnership v. Delgadillo*, 2010 WL 3971763, at *6 (N.M. Ct. App. 2010).

### H. New Mexico Unfair Insurance Practices Act

Southwestern argues that Plaintiffs' claim against Admiral for violating the New Mexico Unfair Insurance Practices Act (Count 9) must be dismissed because this cause of action relies on the contracts' prohibited indemnity and insurance provisions. (Doc. 8 at 8–9.) The insurance provisions, however, are valid insofar as they require Southwestern to purchase insurance to protect M.J. Harris against Southwestern's respective share of the liability for negligent acts or omissions arising out of Southwestern's performance of the contract. *See City of Albuquerque*, 2009-NMCA-081, ¶ 20. Accordingly, Defendant's argument that the Unfair Insurance Practices Act count must fail.

Pursuant to N.M. STAT. ANN. § 59A-16-20, an insurance provider engages in unfair claims practices when it knowingly commits or performs any of the following unfair or deceptive acts with such frequency as to indicate a general business practice:

> A.  misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;
> B.  failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;
> ...
> G.  compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

Plaintiffs do not allege additional misrepresentations were made to other insureds, only that Admiral frequently made misrepresentations to M.J. Harris (Compl. ¶ 88).

## I.        Unfair Trade Practices Act

Lastly, Southwestern argues that Plaintiffs' claim against Southwestern and Admiral for violating the New Mexico Unfair Trade Practices Act (Count 10) must be dismissed because this cause of action relies on the contracts' prohibited indemnity and insurance provisions. (Doc. 8 at 8–9.)  Again, this argument fails as the indemnification and insurance provisions are enforceable to the extent they require Southwestern to indemnify or insure M.J. Harris for Southwestern's negligence.  Under N.M. STAT. ANN. §§ 57-12-2(D)(17), a person engages in an "unfair or deceptive trade practice" when he or she fails "to deliver the quality or quantity of goods or service contracted for."  Plaintiffs have stated a plausible claim for breach of contract: Southwestern and Admiral allegedly failed to indemnify or defend M.J. Harris for the claims against it resulting from Southwestern's negligence.  Therefore, Plaintiffs' allegations are sufficient to state a plausible claim for relief under the New Mexico Unfair Trade Practices Act .

## VI.    CONCLUSION

### Count 1 - Breach of Contract
### Against Admiral

The provision requiring Southwestern to add M.J. Harris as an additional insured for the purpose of indemnification is enforceable to the extent that it requires Southwestern to indemnify or insure M.J. Harris for Southwestern's negligence.  Plaintiffs allege that Southwestern obtained insurance policies through Admiral naming M.J. Harris as an additional insured. (Compl. ¶¶ 33–35.) Additionally, Plaintiffs allege that Southwestern provided certificates of insurance indicating that M.J. Harris was named as an additional insured on the Admiral insurance policies. (Compl. ¶¶ 14–15.)  The Complaint therefore alleges sufficient facts to establish a plausible claim for relief against Admiral.  Consequently, the Court **DENIES** Defendant's Motion to Dismiss with regard to Count 1.

### Count 2 - Breach of Contract and Contractual Indemnification
### Against Southwestern

The contract provisions requiring Southwestern to indemnify M.J. Harris are enforceable to the extent they require Southwestern to indemnify M.J. Harris for Southwestern's negligence.  The indemnification provisions are void, unenforceable, and contrary to New Mexico public policy where they require Southwestern to indemnify M.J. Harris for M.J. Harris' negligence.  Plaintiffs allege that Southwestern failed to indemnify and hold harmless M.J. Harris as required by the parties' agreement. (Compl. ¶ 49.) Consequently, Plaintiffs have alleged sufficient facts to establish a plausible claim for breach of contract and contractual indemnification.  The Court **DENIES** Defendant Southwestern's Motion to Dismiss with regard to Count 2 of the Complaint.

### Count 3 - Traditional and Proportional Common Law Indemnification
### Against Southwestern

Both New Mexico and Texas law block common law indemnity claims where an employer has participated in the states' workers' compensation system. Indeed, common law indemnification has been almost completely abolished. Today, indemnification is primarily a matter of contract law. Accordingly, Plaintiffs have failed to establish a plausible claim for relief for common law indemnification. The Court **GRANTS** Defendant's Motion to Dismiss with regard to Count 3 of the Complaint.

### Count 4 - Breach of Contract and Negligent Failure to Procure Insurance Against Southwestern

In Count 4 of the Complaint, Plaintiffs allege that Southwestern breached the parties' agreement and acted negligently by failing to procure insurance for M.J. Harris. (Compl. ¶¶ 57–61.) In the Complaint's general factual allegations, however, Plaintiffs allege that they were provided with Certificates of Insurance on May 14, 2007 and July 3, 2007 indicating that Southwestern had purchased the required insurance. (Compl. ¶¶ 14–15.) Plaintiffs additionally allege that, at no time, did Admiral give M.J. Harris notice that the insurance policies had been cancelled, and at all times, Southwestern represented that it had fully complied with the insurance requirements of the construction contract. (Compl. ¶¶ 16–17.) Furthermore, Plaintiffs assert that it is their belief Admiral issued the policies and named M.J. Harris as an additional insured. (Compl. ¶ 19.) In Count 4, Plaintiffs then allege that Southwestern acted negligently and breached its contract with M.J. Harris by failing to obtain insurance. (Compl. ¶¶ 57–61.) Plaintiffs' claim for negligent failure to procure insurance must fail, as this claim is conclusory and Plaintiffs fail to provide any factual grounds upon which Plaintiffs are entitled to relief. Accordingly, the Court **GRANT**S Defendant Southwestern's Motion to Dismiss with regard to Count 4 of the Complaint.

### Count 5 - Breach of the Covenants of Good Faith and Fair Dealing

## Against Southwestern and Admiral

Plaintiffs allege that Defendants Southwestern and Admiral breached the implied covenants of good faith and fair dealing in their contracts by willfully and recklessly failing to perform their contractual obligations. (Compl. ¶¶ 62–66.)  Defendant Southwestern argues that dismissal of Count 5 is warranted because the indemnification and insurance provisions are void, unenforceable, and contrary to New Mexico public policy.  This argument must fail because the indemnification provisions are enforceable to the extent of Southwestern's negligence.  Accordingly, the Court **DENIES** Defendant's Motion to Dismiss with regard to Count 5 of the Complaint.

## Count 6 - Contribution
## Against Southwestern and Admiral

In Count 6, Plaintiffs seek contribution from Southwestern and Admiral. (Compl. ¶¶ 67–72.) Plaintiffs assert they are entitled to contribution due to a "mutual contractual liability" that arose from their defense and monetary settlement of Mr. Martinez' tort claims against M.J. Harris. (Compl. ¶ 72.)  Contribution is an equitable remedy granting one who has discharged a common liability the right to recover from another his proportional share of the liability. 12 WILLISTON ON CONTRACTS § 36:14 (4th ed. 2011).  Contribution is most commonly employed in tort law, where one tortfeasor who is jointly and severally liable for a judgment has paid the entirety of the judgment and seeks contribution from the other joint tortfeasors.  Under New Mexico law, however, "[a] joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement." N.M. STAT. ANN. § 41-3-2(C).  Furthermore, under both Texas and New Mexico law, where an employer participates in the workers' compensation system, joint tortfeasors cannot seek contribution from the employer for claims by an employee arising out of his employment.

Moreover, as Southwestern and Admiral are not parties to the settlement agreement, they do not have a contractual obligation to contribute to the settlement. In sum, Plaintiffs have failed to allege sufficient facts to establish a "mutual obligation" requiring contribution—there is no joint and several liability and no mutual debt. Plaintiffs may seek damages from Southwestern and Admiral for breach of contract arising out of their failure to provide indemnification, but they have failed to state a plausible claim for contribution. Wherefore, the Court **GRANTS** Defendant's Motion to Dismiss with regard to Count 6 of the Complaint.

### Count 7 - Equitable Subrogaton/Contribution
### Against Admiral

Equitable subrogation allows an insurer who provided coverage and defense costs to pursue recovery from another insurer who was primarily responsible for the loss. Plaintiffs allege that Amerisure provided the entire defense and settlement for Mr. Martinez' personal injury claims against M.J. Harris. (Compl. ¶ 75.) Furthermore, Plaintiffs allege that Admiral listed M.J. Harris as an additional insured in its insurance contract with Southwestern. (Compl. ¶ 19.) Lastly, under New Mexico law, Southwestern and its insurer Admiral were required to indemnify and hold harmless M.J. Harris to the extent Southwestern was negligent for Mr. Martinez' injuries. Therefore, Plaintiffs have alleged a plausible claim for equitable subrogation against Defendant Admiral, and the Court **DENIES** Defendant Southwestern's Motion to Dismiss with regard to Count 7.

### Count 8 - Unjust Enrichment

In Count 8, Plaintiffs allege that Defendants Southwestern and Admiral are liable to Amerisure for the amount they benefitted from Amerisure's payments to defend and indemnify M.J. Harris. As Plaintiffs have a legal remedy available to them—breach of contract—there may be no reason for the Court to impose an equitable remedy, but such a determination is not yet before

the Court.  The Court **DENIES** Defendant's Motion to Dismiss with regard to Count 8.

### Count 9 - Violation of New Mexico Unfair Insurance Practices Act
### Against Admiral

An insurance provider violates the New Mexico Unfair Insurance Practices Act when it knowingly makes misrepresentations to insureds, fails to promptly communicate with insureds with respect to claims, or compels an insured to institute litigation to recover money due under its policy on such a frequency as to indicate a general business practice. N.M. STAT. ANN. § 59A-16-20. Plaintiffs allege that Admiral engaged in misrepresentations to M.J. Harris with such frequency that it indicates a regular business practice. (Compl. ¶ 88.)  Defendant Southwestern does not address this argument, but only argues that the indemnity provisions of the parties' agreement are void and unenforceable.  Accordingly, Plaintiffs have alleged sufficient facts to establish a plausible claim for relief under the New Mexico Unfair Insurance Practices Act against Admiral.  Therefore the Court **DENIES** Plaintiffs' Motion to Dismiss with regard to Count 9.

### Count 10 - Violation of New Mexico Unfair Trade Practices Act
### Against Southwestern and Admiral

Under the New Mexico Unfair Trade Practices Act, a person engages in an unfair or deceptive trade practice when he or she knowingly deceives or misleads a person in connection with the sale of goods or services.  Plaintiffs allege that Southwestern and Admiral knowingly failed to provide the insurance coverage and indemnification they promised M.J. Harris. (Compl. ¶ 93–95.) Plaintiffs have therefore stated a plausible claim for relief under the New Mexico Unfair Trade Practices Act, and the Court **DENIES** Defendant's Motion to Dismiss with regard to Count 10 of the Complaint.

**WHEREFORE**, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant

Southwestern's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, (Doc. 8), as set forth

herein.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**